# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

JOSEPH STEVE MISKOVICH,

Defendant-Appellee.

UNPUBLISHED
May 26, 2016

No. 325727
Wayne Circuit Court
LC No. 14-008948-FH

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

BECKERING, J. (*concurring*).

This resisting and obstructing criminal case arises out of a post-Tigers game incident. The heart of the issue on appeal entails whether defendant, Joseph Miskovich, was being subject to a lawful arrest at the time Officer Michael Williams of the Detroit Police Department undertook to arrest him. Namely, plaintiff contends that defendant had violated Detroit City Ordinance § 38-2-2, which makes it illegal for any person to "knowingly and willfully interfere with or obstruct any city employee in the performance of his duties . . . ." Defendant contends that he did not violate the ordinance, as he was merely exercising his First Amendment right to free speech at the time, making his arrest for such conduct unlawful and his right to resist legal. I agree with the majority that sufficient evidence was presented to establish that Officer Williams was acting lawfully when he arrested defendant for violating the ordinance. However, I write separately to highlight defendant's actions that physically obstructed Williams from performing his duty.

On September 25, 2014, Williams was directing traffic near Comerica Park after a Tigers game. According to Williams' testimony at defendant's preliminary examination, he ordered a group of pedestrians not to cross the street in order to let traffic proceed through the intersection. Defendant's "best friend" violated Williams' orders to wait and crossed the street anyway, interfering with traffic. Williams stopped the individual, walked to the curb, and began writing him a ticket for disobeying a lawful order. As Williams was issuing the ticket, defendant, who was standing next to his friend, began protesting Williams's decision to issue the ticket. According to Williams, defendant was "yelling, upset, and cursing out loud," saying, "why the fuck are you writing him a ticket, he didn't do anything wrong." Williams continued to write the ticket.

According to Williams, he was attempting to issue the ticket and trying to explain the basis for the ticket to defendant's friend, but defendant's proximity to both his friend and

-1-

Williams while engaging in obstreperous behavior made it difficult to complete the task. Williams explained that he "couldn't even give" defendant's friend the ticket with defendant "right in my face, yelling . . . ." Williams ordered defendant to step back and leave the area, but defendant refused. Williams told defendant he was interfering and ordered defendant to leave a second time; defendant again refused. All the while, defendant was "yelling" and acting "irate." While this was occurring, traffic was starting to back up. Williams testified that he ordered defendant to leave "multiple times." Defendant refused, and responded "I don't have to go anywhere." Eventually, Williams decided to arrest defendant, at which point defendant resisted and attempted to run away.

As noted, the issue in this case concerns whether defendant's arrest for violating Detroit City Ordinance § 38-2-2 was lawful, such that defendant can stand trial for resisting and obstructing under MCL 750.81d(1). The ordinance provides:

> It shall be unlawful for any person to knowingly and willfully interfere with or obstruct any city employee in the performance of his duties as a city employee.

Defendant argues that he was arrested solely for his speech, in particular, his vulgar language, and argues that his speech was protected by the First Amendment.

Defendant is correct in his contention that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v Hill*, 482 US 451, 461; 107 S Ct 2502; 96 L Ed 2d 398 (1987). Here, however, I find the prosecutor submitted sufficient evidence to establish that probable cause existed to lawfully arrest defendant for violating Detroit Ordinance § 38-2-2 because he physically interfered with Williams's duties, i.e., defendant's arrest was not based on his verbal criticism of Williams.

In reaching this conclusion, I am not swayed by the prosecution's contentions that defendant's arrest can be justified based on how physically imposing he was due to his height. Rather, my focus is on defendant's actions that physically obstructed Williams from performing his duties. And there are several. Williams testified that he was attempting to write a ticket to defendant's friend and to explain to the friend why he was writing the ticket. Meanwhile, defendant was standing near Williams and was pestering him, so much so that Williams had trouble finishing the citation. Williams, who was directing traffic at the same time he was attempting to write a lawful citation, asked—and ultimately ordered—defendant to leave so that he could finish the citation. Defendant refused to leave and persisted in his disruptive conduct. According to Williams, defendant was standing next to the person to whom Williams was writing the ticket and was "right in [Williams's] face," to the point where Williams "couldn't even give" the ticket. Williams ordered defendant to leave a second time, and defendant again refused.

Defendant's actions, including standing next to Williams, "right in [his] face," yelling at him to the point where he was unable to finish writing the ticket, and by disobeying at least two lawful orders to leave, reveal that defendant physically obstructed Williams from performing his duties. A pair of hypothetical situations posed by Justice Powell and discussed by the majority in the United States Supreme Court in *Hill*, 482 US 451, reinforces this conclusion. In that case,

Raymond Hill was arrested for shouting at two Houston police officers who had approached another individual. Hill told the officers, "Why don't you pick on somebody your own size?" and responded in the affirmative when asked by one of the officers if he was "interrupting me in my official capacity as a Houston police officer[?]" *Id*. at 453-454. Hill was arrested under a Houston ordinance that made it unlawful, among other matters, to "in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty . . . ." *Id*. at 455. The Court considered the validity of the ordinance in the context of a First Amendment overbreadth challenge.[1] *Id*. at 458. In concluding that the ordinance was overbroad because it criminalized lawful speech, the majority considered two hypothetical scenarios posed by Justice Powell. In the first hypothetical, the Court explained that, under a properly tailored statute, "a municipality constitutionally may punish an individual who chooses to stand near a police officer and persistently attempt to engage the officer in conversation while the officer is directing traffic at a busy intersection." *Id*. at 462 n 11 (quotation marks omitted). In the second, the Court explained that, under a properly tailored statute, a municipality could punish an individual who ran next to and shouted at an officer pursuing a fleeing felon because "[w]hat is of concern in that example is not simply contentious speech, but rather the possibility that by shouting and running beside the officer the person may physically obstruct the officer's investigation." *Id*.

I find defendant's conduct in the instant case to be similar to the examples cited in *Hill*. The ordinance in this case prohibits obstruction, and I agree with the majority that the plain language of the ordinance refers to a physical obstruction. Defendant was not, as he contends, merely voicing his displeasure with Williams's conduct in this case. He was physically preventing Williams from performing his duties. Specifically, his conduct of standing in the immediate proximity of Williams, "right in [his] face," and yelling at Williams prevented Williams from completing the task of writing the ticket. Williams at least twice ordered defendant to leave so that Williams could finish issuing the ticket to defendant's friend, but defendant refused to comply and persisted in his behavior. Consequently, this is not a case, as defendant contends, where he was arrested simply for cursing at a police officer or for criticizing the officer. Rather, it is a case where defendant acted in such a disruptive manner that he physically prevented Williams from performing his duties. In this sense, defendant is like the individual who stands near an officer and persistently attempts to engage the officer, see *Hill*, 482 US at 461 n 11, or like the individual who runs alongside and shouts at an officer who is pursuing a fleeing felon, see *id*.

Accordingly, I concur in the majority's decision to reverse the circuit court's order quashing the information.

/s/ Jane M. Beckering

---

[1] The instant case does not involve an overbreadth challenge. Nor is the ordinance at issue in this case as broad and encompassing as the ordinance at issue in *Hill*.